UNITED STATES of America,
Plaintiff-Appellee,

v.

Joseph Dean BRIOLA,
Defendant-Appellant.

No. 80–2183.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted July 14, 1981.

Decided Aug. 11, 1981.

Rehearing Denied Sept. 3, 1981.

Charles H. Torres, Asst. U. S. Atty., Denver, Colo. (Joseph Dolan, U. S. Atty., Denver, Colo., with him on the brief), for plaintiff-appellee.

Dennis L. Blewitt, Boulder, Colo. and James R. Collins, Denver, Colo., for defendant-appellant.

Before DOYLE and McKAY, Circuit Judges, and CHILSON *, District Judge.

CHILSON, District Judge.

The appellant will be referred to herein as "defendant" or "Briola".

Briola was charged by indictment filed in the United States District Court for the District of Colorado with interstate transportation of stolen securities in violation of Title 18 U.S.C. § 2314.

Briola entered a plea of not guilty and waived a jury trial. Upon trial to the court, he was found guilty and after imposition of sentence, he appealed his conviction to this court.

Briola does not deny that he transported from Colorado to California the stolen securities set forth in the indictment.

* Of the United States District Court for the District of Colorado sitting by designation.

The grounds for appeal are in essence the same as those argued to the trial court. They are:

1. The charges should have been dismissed on the ground of entrapment;

2. The trial court should have dismissed the charges in accordance with the court's inherent supervisory power on the ground that there was cumulative outrageous governmental conduct.

Upon the evidence, the trial court determined that under the decisions of the United States Supreme Court in *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976) and *United States v. Payner*, 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980), neither the defense of outrageous conduct nor entrapment were sustained and that the government had proven the charge beyond a reasonable doubt.

There remains for this Court to examine the evidence and the applicable law and determine whether or not the trial court erred.

## SUMMARY OF EVIDENCE

In 1971, Briola was convicted in federal court for "Bookmaking". After serving 32 months for this offense, he was released on parole.

Shortly thereafter, he was indicted in Federal Court for interstate transportation of counterfeit securities. Trial on this charge resulted in a hung jury. Thereafter, defendant pleaded guilty to the charge and was sentenced to three years imprisonment.

He was confined in the federal prison at El Reno, Oklahoma, and was later transferred to the Federal Correctional Institution at Englewood, Colorado. In August 1978, he was released on parole and returned to Denver.

At that time, F.B.I. agents, Kenneth Thompson and Donald Civitano, were engaged in the operation of a bar and restaurant, known as Cyrano's, in Glendale, Colorado, as an undercover operation for the investigation of criminal activities in that area. Glendale is a municipal enclave completely surrounded by the City and County of Denver. The agents employed Cathy Coffelt as the manager of the establishment.

Shortly after Briola's release on parole, his friend, Jesse Bridwell, took Briola to Cyrano's and introduced him to Cathy. Cathy and Briola soon formed a close relationship which resulted in Briola becoming a frequent visitor to Cyrano's and led to Briola's acquaintance with Thompson and Civitano.

Shortly thereafter, Civitano, knowing of Briola's criminal record, told Briola that he, Civitano, could get rid of any "paper" defendant might come across.

Shortly thereafter, and as a result of this conversation, Briola "tricked" Thompson and Civitano into paying him $2,000 for counterfeit money which Briola claimed he had for sale. In fact, Briola had no such counterfeit money. After some discussion, Briola agreed to pay back to the agents one-half of the $2,000 and no action was taken against Briola.

In late 1978, the defendant moved in with Cathy and lived with her in her apartment. Until Cathy quit working at Cyrano's in January 1979, Briola was a frequent visitor at Cyrano's and had frequent contacts with Thompson and Civitano.

In June 1979, Briola requested Thompson to meet with him at Briola's apartment. At this meeting, Briola showed Thompson a number of securities which he said had been stolen from a Dr. Padernos; informed Thompson that he, Briola, and an associate, Max Snyder, were attempting to negotiate a sale of the securities and sought Thompson's advice and assistance. Thompson agreed to assist in finding a buyer.

Thereafter, at various times, Thompson and Briola discussed the best way of negotiating a sale of the securities, the price that could be obtained from a sale, and the fact that Dr. Padernos' name would have to be forged in the sale of the securities.

In August 1979, Thompson informed the defendant he was still attempting to locate a buyer for the stolen securities. Shortly

thereafter, Thompson arranged a meeting with one Frances Brower, a California police officer, acting undercover as an interested buyer of the stolen securities.

In the latter part of August 1979, Briola, Thompson, Civitano, and Brower met in Denver and discussed the sale of the securities.

On August 28, 1979, Briola met with Thompson and Brower in California and again discussed the sale of the securities, but the defendant did not have the securities with him and no sale was consummated.

On September 4, 1979, Briola called Thompson and asked if Brower was still interested in the securities. On the following day, Thompson advised Briola that Brower was still interested, but was not sure how to consummate the deal. Thompson also told Briola that he had informed Brower the securities were still available.

On October 16, 1979, Briola advised Thompson that he planned to travel to California and asked Thompson if Brower was okay to deal with. Thompson told Briola that he had known Brower for a long time and that as far as he knew, he was "okay". Briola also advised Thompson that he was going to California on a "backgammon deal".

On October 17, 1979, Briola called Brower from Las Vegas, Nevada, and told him he would be in California the following day. On October 18, 1979, Briola met with Brower in California and produced the securities. A sale price of $5700 was agreed upon. Brower paid Briola $5700 in marked bills and Briola delivered the securities to Brower.

On June 11, 1980, the indictment in this action was filed.

In support of his defenses, Briola produced three medical witnesses, Dr. Burr, Dr. Emrick, and Dr. Mason, who testified in effect that Briola was immature and impulsive and could easily be manipulated. They were critical of the agents' participation in the securities transaction and were also critical of the parole officer who had Mr. Briola under his supervision.

The trial court's finding that plaintiff was predisposed to commit the offense is supported by ample evidence.

## APPLICABLE LAW

### ENTRAPMENT

In *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976), the Court reviewed and reaffirmed previous decisions of the Court holding that the defense of entrapment focuses on the intent or predisposition of the defendant to commit the crime and stated at pages 488 and 489, 96 S.Ct. at page 1649:

> "We ruled out the possibility that the defense of entrapment could ever be based upon governmental misconduct, in a case such as this one, where the predisposition of the defendant to commit the crime was established."

Applying this rule to the facts of this case, the defense of entrapment is without merit.

### *SUPERVISORY POWERS*

### and

### *OUTRAGEOUS CONDUCT*

In *United States v. Russell*, 411 U.S. 423, 431, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973), the Supreme Court stated:

> "While we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, cf. *Rochin v. California*, 342 U.S. 165 (1952), the instant case is distinctly not of that breed."

In *Hampton, supra*, 425 U.S. at pages 489–491, 96 S.Ct. at pages 1649–1650, the Supreme Court commented on the foregoing statement in *Russell* as follows:

> "But in each case the government agents were acting in concert with the defendant, and in each case either the jury found or the defendant conceded that he was predisposed to commit the crime for

which he was convicted. The remedy of the criminal defendant with respect to the acts of government agents, which, far from being resisted, are encouraged by him, lies solely in the defense of entrapment....

"If the police engage in illegal activity in concert with the defendant beyond the scope of their duties, the remedy lies, not in freeing the equally culpable defendant, but in prosecuting the police under the applicable provisions of state or federal law."

## UNITED STATES v. PAYNER, 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468

Payner was charged in Federal District Court with falsifying his 1972 federal income tax return. Payner waived a jury trial and moved to suppress a loan guarantee agreement which was a key part of the government's evidence. The loan guarantee agreement was obtained as a result of an illegal search and seizure of a briefcase, owned by one, Wolstencroft.

The District Court found Payner guilty as charged on the basis of all the evidence, but he also found that the government discovered the guarantee agreement by exploiting the flagrantly illegal search of the briefcase. The District Court therefore suppressed all evidence introduced in the case by the government with the exception of Payner's income tax return and the related testimony. Since the tax return alone was insufficient to demonstrate falsification, the District Court set aside Payner's conviction. The District Court believed that the due process clause of the Fifth Amendment and the inherent supervisory power of the Federal Courts required it to exclude the guarantee agreement as tainted evidence. The Court of Appeals for the Sixth Circuit affirmed the District Court's use of its supervisory power, but did not decide the due process question.

The Supreme Court granted certiorari.

The Supreme Court reversed the District Court and the Circuit Court of Appeals stating in pertinent parts:

"We conclude that the supervisory power does not authorize a federal court to suppress otherwise admissible evidence on the ground that it was seized unlawfully from a third party not before the court. Our Fourth Amendment decisions have established beyond any doubt that the interest in deterring illegal searches does not justify the exclusion of tainted evidence at the instance of a party who was not the victim of the challenged practices. *Rakas v. Illinois*, supra, [439 U.S. 128] at 137 [99 S.Ct. 421 at 427, 58 L.Ed.2d 387]; *Alderman v. United States*, 394 U.S. [165] at 174–175 [89 S.Ct. 961 at 966–967, 22 L.Ed.2d 176]. The values assigned to the competing interests do not change because a court has elected to analyze the question under the supervisory power instead of the Fourth Amendment. In either case, the need to deter the underlying conduct and the detrimental impact of excluding the evidence remain precisely the same.

"The District Court erred, therefore, when it concluded that

'society's interest in deterring [bad faith] conduct by exclusion outweigh[s] society's interest in furnishing the trier of fact with all relevant evidence.' [*United States v. Payner*], 434 F.Supp. [113] at 135. This reasoning, which the Court of Appeals affirmed, amounts to a substitution of individual judgment for the controlling decisions of this Court. Were we to accept this use of the supervisory power, we would confer on the judiciary discretionary power to disregard the considered limitations of the law it is charged with enforcing. We hold that the supervisory power does not extend so far."

## CONCLUSION

The evidence and the applicable law fully support the trial court's determination of Briola's guilt of the charge and the trial court's determination is hereby affirmed.